## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**REBECCA M. MURILLO**                     **CIVIL ACTION NO.**
    **Plaintiff**                             **3:17-cv-1883-VLB**
                                :
**v.**                                     :
                                :

**A BETTER WAY WHOLESALE**                 :
**AUTOS, INC. and WESTLAKE**               :
**SERVICES, LLC d/b/a WESTLAKE**           :    **JANUARY 10, 2019**
**FINANCIAL SERVICES,**
    **Defendants**


## OBJECTION TO DEFENDANTS' MOTION TO VACATE ARBITRATION AWARD AND REPLY TO DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO CONFIRM AWARD

## I.   INTRODUCTION

ABW previously moved this Court for an Order Compelling the Plaintiff to arbitrate her claim a pre-dispute arbitration clause. Having succeeded in that endeavor, ABW now seeks to avoid the results of that arbitration. There is no justification, however, to vacate a duly entered award that conformed to the parties' unrestricted submission. Moreover, due process considerations do not apply to private arbitration proceedings and, even if they did, those considerations do

not preclude the arbitrator's imposition of punitive damages in light of ABW's repeated violations of CUTPA.

## II.    THE RECORD

Plaintiff originally brought this action claiming that ABW violated CUTPA by engaging in a "yo-yo" scam. It delivered a vehicle pursuant to a retail installment contract and then required her to enter into a new, more onerous contract, in order to keep her car. It also threatened to keep her down payment if she did not agree to the new contract terms. She claimed, *inter alia,* violations of CUTPA, and she sought punitive damages.

Defendants were defaulted for failing to appear, but eventually appeared. ABW moved to stay proceedings and to compel arbitration with the American Dispute Resolution Center ("ADRC") on or about April 10, 2018 (ECF #33). Plaintiff objected to the motion on the basis of the time that had passed since the initial filing and the inconsistencies in the arbitration clauses in the purchase order and retail installment sales contract. Plaintiff further argued that any arbitration should be before the American Arbitration Association

("AAA") rather than the ADRC[1]. The Court granted the motion to compel and ordered that the arbitration be before the AAA. (ECF #35).

Consistent with the Court's order, the Plaintiff demanded arbitration with the AAA. However, on June 13, 2018, the AAA declined to administer the arbitration, because ABW previously failed to comply with AAA's procedures. Eventually, by agreement of the parties and court order (See ECF #39), the case was submitted to arbitration to ABW's preferred administrator, the ADRC, and the parties further agreed that the AAA's Rules and Due Process protocols would apply. ADRC appointed Attorney Peter Nicolai as arbitrator.  Plaintiff waived an evidentiary hearing and agreed to have the claim decided upon written submissions.

The parties were directed to file their submissions on October 1, 2018.[2] Plaintiff filed her submission on that date.[3] On October 2, 2018,

---

[1] The purchase order mandated arbitration before the ADRC, but the retail installment sales contract named the AAA.

[2] See August 28, 2018 ADRC Letter, Exhibit 1.

[3] Exhibit 2.

Defendants requested an extension of time until October 5, 2018 to file their submission. The arbitrator initially denied the request to file a late submission, but later reversed himself and allowed Defendants to file their brief by October 9, 2018 and also permitted Plaintiff to file a reply. Defendants failed to adhere to that deadline and eventually filed their submission on October 15, 2018.[4] Plaintiff filed her reply on October 19, 2018.[5] On October 22, 2018 the hearing was declared closed.[6]

Arbitrator Nicolai issued his award on October 26, 2018.[7] The arbitrator found for Plaintiff under all causes of action. The award, as it pertains to ABW[8], provides:

---

[4] See ADRC October 15, 2018 email, Exhibit 3. Defendants' submission, an attachment to that email, is attached as Exhibit 4.

[5] See ADRC October 19, 2018 email acknowledging receipt, Exhibit 5. Plaintiff's reply submission is attached as Exhibit 6.

[6] See ADRC October 22, 2018 email, Exhibit 7.

[7] Exhibit 8.

I find that RESPONDENT A Better Way Wholesale Autos, Inc. caused damages totaling $2,687.41 to CLAIMANT and caused those damages by violating both the common law and TILA, CUTPA and RIFSA [sic]. As a result, I award both actual damages totaling $2,687.41 and statutory damages to CLAIMANT against RESPONDENT A Better Way Wholesale Autos, Inc. in the amount of $6,700.93 for a total award of $9,388.34.

Since punitive damages are available pursuant to CUTPA, they are available in this proceeding. See Consumer Rule C —7 (b). CLAIMANT has requested five times actual and statutory damages as punitive damages against RESPONDENT A Better Way Wholesale Autos, Inc.

I take note of the facts that:

1. Several prior arbitration awards and court decisions have been issued against RESPONDENT A Better Way Wholesale Autos, Inc. for similar actions.

---

[8] The arbitrator also awarded $1,000 damages and $300 in attorney's fees against defendant Westlake.

2. **The public policy of the state of Connecticut as expressed in the statutes violated here is that punitive damages are awarded to discourage further violations of its statutes and public policies.**

3. **Prior litigations have not been apparently successful in discouraging RESPONDENT A Better Way Wholesale Autos, Inc. from further violations these statutes and public policies. As a result, I award the sum of $234,708.50 in punitive damages against RESPONDENT A Better Way Wholesale Autos, Inc.; an amount equal to twenty-five times combined actual and statutory damages suffered by CLAIMANT in furtherance of the public policy of the State of Connecticut to discourage violation of its statutes and to hopefully finally dissuade RESPONDENT A Better Way Wholesale Autos, Inc. from its method of business.**

**Defendants filed a motion for reconsideration specifically objecting to the amount of punitive damages award on November 8, 2018.[9] Plaintiff objected on the grounds that it was procedurally**

---

[9] **Exhibit 9**

improper and that Defendant's Due Process rights were not implicated or violated by the award.[10] As the hearing was closed, Arbitrator Nicolai did not consider the post-hearing submissions.[11]

III.    **ARGUMENT**

    a.  **Standard of Review**

    Section 9 of the FAA provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in

---

[10] Exhibit 10.

[11] ADRC November 13, 2018 email, Exhibit 11.

sections 10 and 11 of this title.[12]

The arbitration agreement in the retail installment contract provides "Any Court having jurisdiction may enter judgment on the arbitrator's award."

The FAA provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."[13] "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."[14]

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling

---

[12] 9 U.S.C. §9.

[13] *Hall Street Assoc. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).

[14] *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted).

disputes efficiently and avoiding long and expensive litigation."[15] "[A]n arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.' [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."[16] "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."[17]

---

[15] *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993); *see also Bd. of Ed. of Hartford v. Hartford Fed. of Sch. Sec'y*, 26 Conn. App. 351, 352, 600 A.2d 1053, 1054 (1992) ("It is undisputed that arbitration awards are generally upheld and that we give great deference to an arbitrator's decisions since arbitration is favored as a means of settling disputes" and "the autonomous nature of the arbitration process dictates minimal intrusion by the courts") (citations omitted).

[16] *187 Concourse Associates v. Fishman*, 399 F.3d 524, 526 (2d Cir. 2005)

[17] *D.H. Blair & Co., Inc., supra,* 462 F.3d at 110.

Specifically, the party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."[18]

Section 10(a)(1)-(4) of the FAA allow vacatur of an arbitration award under only four narrow circumstances.  Section 10(a)(4) of the FAA provides for vacatur "where the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final, definite award upon the subject matter was not made."

   b.  The Submission Was Unrestricted, and The Arbitrator Was
       Empowered to Decide All Matters Before Him

The scope of the authority of the arbitrator is determined by the intention of the parties to the arbitration, the agreement and the submission made by the parties.[19]  Moreover, "[w]here the submission

---

[18] *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (citation omitted).

[19] *Local 1199, Drug, Hosp. & Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) *citing United Paperworkers Int'l Union v. Misco,  Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987).

does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed on the facts or the interpretation of the agreement by the arbitrator was erroneous."[20]

The agreement here stated: "The parties, by their duly authorized undersigned representatives, agree to have the claims in this lawsuit resolved by arbitration before the American Dispute Resolution Center in accordance with the rules and Due Process protocols of the American Arbitration Association", thus indicating that the scope of the arbitration was unrestricted. Moreover, the operative arbitration clauses found in the underlying purchase order and retail installment sales contract also provided for unrestricted arbitration.

The purchase order states:

Any claim or dispute, whether in contract, tort, statue or otherwise including the interpretation and scope of this clause, and the arbitrability of the claim or dispute, between you and us or our employees, agents, successors or assigns, which arise out

---

[20] *Ottey,* supra.

of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

The retail installment sales contract similarly provides for unrestricted submission:

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such

12

claim or dispute.

Under § 10(a)(4) of the FAA, the question is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."[21]  "[T]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration and is determined by the agreement or submission."[22] Thus, the question here is whether the arbitrator had the power to award punitive damages, not whether the amount awarded requires judicial review.

In this case, the question of punitive damages was submitted to the arbitrator. The Complaint, which was incorporated in the submission, states at paragraph 67: "For ABW's violations of CUTPA, Plaintiff seeks actual damages, punitive damages, and a reasonable

---

[21] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 694, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) (internal quotation marks omitted).

[22] *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

13

attorney's fee and costs." The question of punitive damages was therefore squarely before the arbitrator.

     c. <u>**ABW Improperly Seeks to Relitigate Its Conduct, And It Has Changed Its Story in the Process.**</u>

In the present motion, ABW attempts to relitigate the facts by arguing that its conduct was negligent at worst and that punitive damages are not justified in any amount.[23] Essentially, ABW argues that it understandably extrapolated Plaintiff's income from her paystub when it overstated the income in her credit application.  This Court should not take that bait. As described more fully in the above section regarding the standard of review, the arbitrator's factual and legal findings are not subject to judicial review.

ABW's argument is not only improper, it is also disingenuous. In advancing this argument, ABW tacitly acknowledges that it was responsible for inflating Plaintiff's income on the credit application. However, it argued quite a different case before the arbitrator.

---

[23] Memorandum of Law in Support of Defendants' Motion to Vacate ("Memorandum"), pp.7-9 (ECF # 44)

Specifically, ABW argued to the arbitrator that it was justified in requiring Plaintiff to sign a new contract because her credit application had been rejected by a third party because the Plaintiff had ostensibly furnished false information regarding her income on a credit application.[24] Upon reviewing ABW's documentary "evidence", which she had not previously seen, Plaintiff realized that the section regarding income was filled in after she signed the document.  Plaintiff noted this in her reply and in her supplemental statement to the arbitrator. She also pointed out that the income information was written with different handwriting than the other information. The arbitrator believed the Plaintiff and concluded that it was ABW that had supplied the false income information. ABW unsuccessful attempt to blame Plaintiff for the false information had an significant impact on the arbitrator's decision.  The arbitrator reasonably inferred from ABW's false accusation that its inflating of Plaintiff's income was willful.

---

[24] Exhibit 4, p. 2; John Albano Affidavit, ¶¶ 8-9.

ABW's original strategy of blaming the Plaintiff for falsifying a credit application back-fired. So, it now pretends that it never sought to blame Plaintiff and instead argues that it acted negligently rather than purposefully. Thus, ABW not only seeks to relitigate the case, but it has changed its story in the process. Such gamesmanship is contrary to the purposes of arbitration, i.e., the swift and final resolution of claims. *See Folkways,* 898 F.2d at 111 (purpose of federal policy favoring arbitration is settling disputes efficiently and avoiding long and expensive litigation).

    d. <u>The Arbitrator Properly Considered ABW's Prior Violations of CUTPA, and the Award Was Appropriate, Even If Due Process Considerations Applied.</u>

Awarding punitive damages under CUTPA is undertaken with a different rubric than under the common law. Judge Underhill recently addressed these issues:

Having determined that the common-law computation of damages was inapplicable [to CUTPA], the [Connecticut Supreme] Court considered the relevant factors laid out by the

United States Supreme Court in *Exxon Shipping v. Baker*, 554 U.S. 471 (2008), in determining punitive damages.   The *Exxon* factors include: (1)"the degrees of relative blameworthiness, i.e., whether the defendant's conduct was reckless, intentional or malicious"; (2) "whether the defendant's [a]ction [was] taken or omitted in order to augment profit"; (3) "whether the wrongdoing was hard to detect"; (4) "whether the injury and compensatory damages were small, providing a low incentive to bring the action"; and (5) "whether the award will deter the defendant and others from similar conduct, without financially destroying the defendant." (Citations omitted.)[25]

These *Exxon* factors, and especially 1, 2, 4 and 5, weighed in favor of an award of punitive damages, because the arbitrator found that ABW's conduct was intentional and done so in order to increase its profit. The compensatory damages were low. And, in light of the

---

[25] *BARBARA IZZARELLI, Plaintiff, v. R.J. REYNOLDS TOBACCO CO., Defendant.*, No. 3:99-CV-2338 (SRU), 2018 WL 6575458, at *3 *citing Ulbrich v. Groth*, 310 Conn. 375 (2013).

previous and more limited awards of punitive damages, the arbitrator was convinced that a larger award was required in order to deter ABW in the future, since smaller awards had not had a meaningful effect.

The issue of punitive damages with respect to deterrence without financial destruction requires special attention herein. The overriding factor is that ABW is a serial violator of CUTPA and that previous, smaller awards did little, or nothing, to cause a change to its business practices. ABW notes on its website that sells over 4,000 used vehicle per year and is the highest volume independent car dealership in Connecticut.[26] From its flagrant disregard for CUTPA, a

---

[26] A Better Way Wholesale Autos, Inc. – About Us, available online at https://www.abwautos.com/about_us (Last accessed December 17, 2018) ("We stock over 600 pre-owned vehicles, all priced thousands below market value! Our store operates at a very high volume, in fact we are proud to be the highest volume independent auto dealer in the state of Connecticut. To keep overhead costs to a minimum, we maintain a small showroom, with most of our vehicles kept off-location in storage lots. Less overhead means less markup on our vehicles, and

reasonable fact finder would determine that ABW's business model is either premised on violating CUTPA or its profits are high enough that judgments entering from routine CUTPA violations are insufficient for it to modify its practices. Notably, ABW does not argue that this award will cause financial destruction; it argues only that the award is excessive.

Courts routinely uphold punitive damage awards when their relationship to a company's profits is meant to serve as a meaningful deterrent without forcing it out of business. For example, in *Portfolio Recovery Associates LLC v. Mejia*[27], the Missouri Circuit Court upheld a jury's punitive damages award of $82 million, an amount equal to one half of the company's net profits for the year. In *Mejia,* the defendant pursued a civil suit long after it was aware that it had filed against the wrong individual. In upholding the jury's award, the court noted:

The Court finds the harm to Plaintiff was the result of intentional malice and not mere accident. This Defendant owns debt in all 50

greater savings for our customers. DID YOU KNOW? We sell over 4,000 vehicles each year!")

[27] Case No. 1216–CV34184 (16th Cir.Ct.Mo.2014) (Copy attached)

states – 750,000 accounts in Missouri, 37,500 of which are in litigation. It shows no remorse. It's [sic] business model is irresponsible and preys against the financially vulnerable. This Defendant does not respect the Court's rules. And, especially reprehensible is Defendant's use and abuse of our court system to harm the Plaintiff.[28]

In reaching its conclusion, the *Mejia* court reviewed other circumstances in which the factor of punitive damages was double, triple or even quadruple digit.[29] These cases, like *Mejia*, involved situations with low compensatory damages but particularly egregious conduct.

The consideration of the past conduct in *Mejia* decision is not unusual. For example, courts may look to punitive damage awards against repeat offenders to see if they have learned from their punishment when deciding whether to sanction them again. *In re*

---

[28] *Id.*at *8.

[29] *Id.* at *7.

*Lopez*[30], the Court specifically cited *Mejia* when deciding to sanction the same defendant, Portfolio Recovery Associates LLC, for its abusive discovery tactics. While the findings of fact in an individual case may not be influenced by the results of previous litigation, patterns of illegal conduct established in litigation may serve as guide as to whether or not a defendant is learning from the admonishments of courts and other adjudicative bodies.

In *State Farm Mut. Auto. Ins. Co. v. Campbell*, the United States Supreme Court reiterated the four factors in assessing the reasonability of punitive damages earlier articulated in *BMW of N. Am., Inc. v. Gore*:

> [T]he harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; <u>the conduct involved repeated actions or was an isolated incident</u>; and the harm was

---

[30] *2015 WL 5438850,* n. 3 (Bankr.S.D.Tex. Sep. 14, 2015).

the result of intentional malice, trickery, or deceit, or mere

accident.[31]

(Emphasis supplied.) Repetition of wrongful conduct is an important

consideration in setting the amount of punitive damages. Courts agree

that if a defendant fails to acknowledge that its actions are illegal,

increasing the amount of punitive damages should reinforce that the

complained of conduct must cease:

> [E]vidence that a defendant has repeatedly engaged in prohibited
>
> conduct while knowing or suspecting that it was unlawful would
>
> provide relevant support for an argument that strong medicine is
>
> required to cure the defendant's disrespect for the law. Our
>
> holdings that a recidivist may be punished more severely than a
>
> first offender recognize that repeated misconduct is
>
> more reprehensible than an individual instance of malfeasance.

*BMW of N. Am., Inc. v. Gore.*[32]

---

[31] 538 U.S. 408, 419 (2003).

[32] 517 U.S. 559, 576–77 (1996).

Repeated conduct is also pertinent to the consideration of the degree of reprehensibility, another factor in setting a punitive damages award:

The United States Supreme Court laid out the following relevant factors to consider in answering that question [of whether an award comports with Due Process]: "[1] the degree of reprehensibility of the defendant's misconduct; [2] the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; [and 3] the difference between the punitive damages awarded ... and the civil penalties authorized or imposed in comparable cases." *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Among those factors, "the reprehensibility of a defendant's conduct is the most important[.]" *Ulbrich*, 310 Conn. at 455. "Reprehensibility is determined by 'considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated

<u>incident</u>; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.'[33]

(Emphasis supplied. Citations omitted.)

In the instant matter, Plaintiff provided the arbitrator with citations to two appellate decisions involving similar conduct by ABW.[34]  Plaintiff also attached four arbitral awards involving similar conduct by ABW.[35] It was therefore quite reasonable for the arbitrator

———————————————

[33] *Izzarelli*, supra. at *4.

[34] Plaintiff submitted extensive briefing regarding *Dixon v. A Better Way Wholesale Autos, Inc.*, No. 3:15-CV-691(AWT), 2016 WL 6519116 (D. Conn. 2016), aff'd, 692 Fed. Appx. 664 (2d Cir. 2017) (CUTPA and RISFA violations stemming from a wrongful repossession) and *Freeman v. A Better Way Wholesale Autos, Inc.*, 174 Conn. App. 649, 665-66 (2017) (Holding that it is a CUTPA violation to fail to return a deposit when a dealer changes the terms of the transaction). Exhibit 2, pp. 19-22.

[35] *Rodriguez v. American Credit Acceptance LLC, et al*, Award or Arbitrator (May 12, 2015, Downey, Arb.); *Dixon v. A Better Way Wholesale Autos, Inc.*, Decision and Interim Award (Jan. 26, 2016,

to conclude the more modest damage awards were not sufficiently severe to deter continued CUTPA violations.

And while Plaintiff had suggested a punitive damages award of 5x her damages, that suggestion preceded ABW's false accusation that Plaintiff had lied on her credit application. Plaintiff or her counsel did not know that ABW would advance such an argument when she made her submission and punitive damages request.  This disingenuous approach demonstrated to the arbitrator that ABW had not been influenced by prior, more modest punitive damage awards.

Courts have specifically recognized there are instances when double-digit multipliers are warranted, even respecting the Due Process requirements of a court decision. In the Seventh Circuit, Judge Posner stated in *Mathias v. Accor Econ. Lodging, Inc.*:[36]

---

Kocher, Arb.); *Saint Paul v. A Better Way Wholesale Autos, Inc.*, Award of Arbitrator (July 21, 2016, Downey, Arb.); *Villar v. A Better Way Wholesale Autos, Inc.*, Award of Arbitrator (July 29, 2017, Gamm, Arb.). Exhibit 2, pp. 22, 31-43.

[36] 347 F.3d 672, 676-677 (7th Cir. 2003).

We must consider why punitive damages are awarded and why the Court has decided that Due Process requires that such awards be limited. The second question is easier to answer than the first. The term "punitive damages" implies punishment, and a standard principle of penal theory is that "the punishment should fit the crime" in the sense of being proportional to the wrongfulness of the defendant's action, though the principle is modified when the probability of detection is very low (a familiar example is the heavy fines for littering) or the crime is potentially lucrative (as in the case of trafficking in illegal drugs). Hence, with these qualifications, which in fact will figure in our analysis of this case, punitive damages should be proportional to the wrongfulness of the defendant's actions.

When punitive damages are sought for billion-dollar oil spills and other huge economic injuries, the considerations [regarding the amount of the multiplier] that we have just canvassed fade. As the Court emphasized in *Campbell,* the fact that the plaintiffs in that case had been awarded very substantial compensatory damages—$1 million for a

dispute over insurance coverage—greatly reduced the need for giving them a huge award of punitive damages ($145 million) as well in order to provide an effective remedy. Our case is closer to the spitting case. The defendant's behavior was outrageous but the compensable harm done was slight and at the same time difficult to quantify because a large element of it was emotional.

In *Mathias*, a *37x multiplier* was approved where a motel had knowingly rented rooms that had bedbug infestations. In justifying the size the multiplier, the Circuit Court noted:

The award of punitive damages in this case thus serves the additional purpose of limiting the defendant's ability to profit from its fraud by escaping detection and (private) prosecution. If a tortfeasor is 'caught' only half the time he commits torts, then when he is caught he should be punished twice as heavily in order to make up for the times he gets away."[37]

---

[37] *Id.*

This logic applies equally to this case.  ABW holds itself out as the highest volume used car dealer in Connecticut. The cases brought against it represent a tiny portion of its overall transactions. Yet, these cases show a clear repetition of the same illegal conduct. It would strain credulity that ABW engages in these practices only in the transactions that give rise to arbitrations or lawsuits.

Judge Posner also looked to the conduct of the defendant and the way that it defends a case (or cases): "[T]he defendant is investing in developing a reputation intended to deter plaintiffs. It is difficult otherwise to explain the great stubbornness with which it has defended this case, making a host of frivolous evidentiary arguments despite the very modest stakes even when the punitive damages awarded by the jury are included."[38] Judge Posner could have been describing ABW's defense tactics. The arbitrator was likewise aware of ABW's defense strategy and its employment of similar tactics – including the false claim that Plaintiff had misrepresented her income. Where a defendant employs obfuscatory tactics to discourage claimants from exercising their rights in situations involving clear

---

[38] *Id.* at 677.

liability, more extreme punitive damages are justified to deter illegal conduct. Otherwise, the arbitrator would in effect condone the efforts to scare off legitimately aggrieved claimants.

At present, in twelve arbitrations (including this one) in which ABW lost to consumers represented by Claimant's counsel, ABW sought to vacate every award. It lost every motion, and it appealed (or attempted to appeal) every adverse ruling. It has lost every appeal decided.[39] Its defense approach further justifies the strong message sent by the arbitration award.

_____

[39] See *Harper-Wilson and Young v. A Better Way Whole Autos, Inc.*, Superior Court, Judicial District of New Haven, Docket No. NNH-CV-15-6056633-S *cert denied* (April 3, 2017, Abrams, J.)(Appeal dismissed, cert denied) (Memorandum of decision denying motion to vacate and confirming arbitration award.); *A Better Way Wholesale Autos, Inc. v. Gause*, Superior Court, Judicial District of Waterbury, Docket No. CV-16-6031850 (Motion to vacate denied) *affirmed* 184 Conn. App. 643 (2018); *A Better Way Wholesale Autos, Inc. v. Oteng, Superior Court*, Judicial District of Waterbury, Docket No. CV-16-6031616 (Motion to vacate denied.); *A Better Way Wholesale Autos, Inc. v. Saint Paul*,

Superior Court, Judicial District of Waterbury, Docket No. CV-16-6031881 (Dec. 30, 2016, Taylor, J.) (Motion to vacate denied, appeal pending); *A Better Way Wholesale Autos, Inc. v. Thibodeau*, Superior Court, Judicial District of Waterbury, Docket No. CV-17-6033891 (May 16, 2017, Taylor, J.) (Superior Court denying application to vacate arbitration award and confirming arbitration award, appeal argued and awaiting opinion.) *affirmed per curiam* AC 40509, Oct. 30, 2018; *Dixon v. A Better Way Wholesale Autos, Inc.*, No. 3:15-cv-691(AWT) (D. Conn. Apr. 1, 2016) (Order granting Plaintiff's motion for judgment following arbitration award and entering judgment, affirmed on appeal, *supra.*); *Smith v. A Better Way Wholesale Autos, Inc.*, Superior Court, Judicial District of Waterbury, Docket No. CV-16-6032761 (Feb. 3, 2017, Taylor, J.) (competing application to vacate – Memo. Of Dec. on motion to dismiss or to stay proceedings re: application to vacate arbitration award, staying case until the federal court determines how it will proceed); *Smith,* supra. (D. Conn. Filed Apr. 12, 2017) (District Court granted motion for judgment following arbitration award, appeal dismissed for failing to file brief.); *A Better Way Wholesale Autos v. Villar*, Superior Court, Judicial District of Waterbury; Docket No. UWY-

### e. ABW Waived Due Process Protections By Requiring Consumers to Arbitrate.

ABW has made a business decision to arbitrate disputes with customers rather than afford them and itself the procedural and Constitutional protections of court proceedings. Court are generally loathe to allow businesses, who insert these clauses into their

---

CV-16-6031772-S (application confirmed, appeal pending AC 41881); *Liebman v. A Better Way Wholesale Autos, Inc.*, No. 3:15cv1263(JBA) (D. Conn. Mar. 21, 2017) (order denying ABW's motion to vacate arbitration award and granting motion to confirm award)(appeal taken and withdrawn); *A Better Way Wholesale Autos, Inc. v. Rodriguez*, 176 Conn. App. 392 (2017) *cert. denied.* 327 Conn. 992 (2018) (Motion to vacate denied, affirmed on appeal.); *Hamidovic v. A Better Way Wholesale Autos, Inc*, Judicial District of New Britain, Docket No. HHB-CV-186046970-S (Motion to dismiss application to vacate granted Nov. 5, 2018) *appeal filed* Nov. 8, 2018, AC 42269.

contracts of adhesion to later cry foul regarding the limitation of rights

in arbitration.[40]

　　　While *Gore,* supra. stands for the proposition that excess punitive

damages can violate the Due Process clause, the arbitrator's award

does not involve state action. Moreover, the court's confirmation of an

award is essentially a ministerial function that does not constitute

state action and therefore does not implicate the Due Process clause.

　　　ABW struggles to find authority for its proposition that

confirmation of an award implicates due process, because the weight

of authority holds otherwise. *See Hadelman v. Deluca*, 274 Conn. 442,

447-448 (2005) ("Connecticut does not have a well-defined public

policy against the award of excessive punitive damages and that,

'because an arbitration award does not constitute state action and is

not converted into state action by the trial court's confirmation of that

award, an arbitration panel's award of punitive damages does not

_____

[40] *See e.g. Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884,

890 (N.Y. 1997) ("Having agreed to plenary arbitration, they should not

garner that strategic advantage against their aggrieved or dissatisfied

customers.")

implicate the Due Process clause, regardless of how excessive the award may be.'"); *MedValUSA Health Programs, Inc. v. MemberWorks, Inc.*, 273 Conn. 634, 664-665 (2005) ("[W]e simply fail to find in the combination of general limitations on damage awards in courts, the kind of well-defined and dominant public policy against excessive punitive damages that would justify setting aside a private, consensual arbitration award on the basis of the stringent and narrow confines of the public policy exception.").

In *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186 (11th Cir. 1995), the defendant challenged a district court's confirmation of an arbitration award of $300,000 in punitive damages. *Id.* at 1187-88. The Eleventh Circuit rejected a due process challenge to the arbitrator's award of punitive damages, holding that due process considerations do not apply to arbitral awards, holding:

> First, it is axiomatic that constitutional due process protections do not extend to private conduct abridging individual rights. Thus, only state action is subject to scrutiny under the Due Process Clause. The Supreme Court has described a specific inquiry to determine if the state action requisite to a due process

claim has been met: In the typical case raising a state-action

issue, a private party has taken the decisive step that caused the

harm to the plaintiff, and the question is whether the State was

sufficiently involved to treat that decisive conduct as state

action. This may occur if the State creates the legal framework

governing the conduct ...; if it delegates its authority to the

private actor ...; or sometimes if it knowingly accepts the

benefits derived from unconstitutional behavior.... Thus, in the

usual case we ask whether the State provided a mantle of

authority that enhanced the power of the harm-causing individual

actor.

The inquiry must be whether there is a sufficiently close nexus

between the State and the challenged action of the regulated

entity so that the action of the latter may be fairly treated as that

of the State itself.").

Applying this analysis, <u>we agree with the numerous courts that</u>

<u>have held that the state action element of a due process claim is</u>

<u>absent in private arbitration cases</u>. . .  In the present case, the

arbitration was a private proceeding arranged by a voluntary

34

contractual agreement of the parties. Accordingly, the arbitration

proceeding itself did not constitute state action.

*Id.* at 1190-1191 (citations and internal quotations omitted; emphasis

supplied).

Having held that the arbitrator's award of punitive damages did

not involve due process, the Circuit Court considered – and rejected –

the defendant's argument that the district court's confirmation of the

award violated due process:

PSI further argues that the district court's *confirmation* of the

punitive damage award violated due process, apparently relying

on the *Shelley v. Kraemer* theory that a court's enforcement of a

private contract constitutes state action. *See Shelley v.*

*Kraemer,* 334 U.S. 1, 19-20, 68 S.Ct. 836, 845, 92 L.Ed. 1161

(1948) (holding that a court order enforcing a racially restrictive

covenant constitutes state action). The holding of *Shelley,*

however, has not been extended beyond the context of race

discrimination. *See* Edward Brunet, *Arbitration and Constitutional*

*Rights,* 71 N.C.L.Rev. 81, 111 (1992)("Characterizing a *Shelley*-

type court enforcement as state action could be criticized

because the case has been interpreted as limited to its facts.");
Laurence H. Tribe, *American Constitutional Law* 1711-12 (2d ed.
1988) ("[C]ourts and commentators have characteristically
viewed *Shelley* with suspicion."). Instead, the concept of state
action has since been narrowed by the Supreme Court. *See,*
*e.g., Tarkanian,* 488 U.S. at 199, 109 S.Ct. at 465-66 (holding that
the NCAA is not a state actor); *San Francisco Arts & Athletics,*
*Inc. v. United States Olympic Committee,* 483 U.S. 522, 542-47,
107 S.Ct. 2971, 2984-87, 97 L.Ed.2d 427 (1987) (holding that U.S.
Olympic Committee is not a governmental actor *\*1192* despite
federal charter, regulation, and funding); *Flagg Bros., Inc. v.*
*Brooks,* 436 U.S. 149, 164-65, 98 S.Ct. 1729, 1737-38, 56 L.Ed.2d
185 (1978)(rejecting argument that private post-eviction sale of
furniture permitted under New York Uniform Commercial Code
constituted state action). In light of this narrow interpretation of
state action, courts considering the issue have rejected the
argument that the limited state action inherent in the
confirmation of private arbitration awards mandates compliance
with the Due Process Clause. *See, e.g., United States v.*

*American Soc'y of Composers, Authors and Publishers,* 708 F.*SupDp.* 95, 96-97 (S.D.N.Y.1989) (holding mere court approval of arbitration is not state action; under that theory "all arbitrators could be subject to due process limitations through the simple act of appealing the arbitrators' decisions to the court system"); *cf. Rifkind & Sterling, Inc. v. Rifkind,* 28 Cal.App.4th 1282, 33 Cal.Rptr.2d 828, 834 (1994) (holding that state court confirmation of an arbitration award constitutes only a "limited degree of state action" that does not require *Haslip-Honda Motor Co.* judicial review). We likewise decline to extend *Shelley* and hold that the mere confirmation of a private arbitration award by a district court is insufficient state action to trigger the application of the Due Process Clause.

*Davis, supra,* 1191-1192 (emphasis in original). *See also Shahinian v. Cedars-Sinai Med. Ctr.*, 124 Cal. Rptr. 3d 128. , 144 (Cal. Ct. App. 2011)(Due Process class inapplicable to private arbitration proceeding); *Commonwealth Associates v. Letsos*, 40 F. Supp. 2d 170, 177 (S.D.N.Y. 1999)("The Due Process challenge to the award also is without merit. … Indeed, as the New York Court of Appeals recently

stated, 'it would be ironic and anomalous to permit parties from the securities industry, who generally derive benefits from the arbitration method they impose on their thousands of consumers, to elude their own industry-drafted arbitration agreements.")

Thus, the confirmation of private punitive damage award lacks the requisite state action for the Due Process clause to be involved. Indeed, courts routinely enforce contracts in which one or both parties forgo certain Constitutional rights between them. For example, judicial enforcement of a condominium association's deed restriction involving the display of signs was held not to constitute state action.[41] Courts will likewise enforce a waiver of the right to a jury trial by contract as long as the waiver is not induced by fraud.[42] Indeed, by agreeing to arbitrate, Plaintiff relinquished her Constitutional right to a trial by jury. By mandating a process that it knows will deprive consumers of

_____

[41] *Loren v. Sasser*, 309 F.3d 1296, 1303 (11th Cir. 2002).

[42] *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007).

many safeguards of the court system, ABW cannot now complain that its due process rights were violated due to a strategic move it now regrets.

      f.   <u>Punitive Damages Awards Do Not Implicate the Eighth Amendment</u>

There is simply no basis for ABW's argument that the award implicates the Eight Amendment, because the Supreme Court has held that the Eighth Amendment does not apply to punitive damage awards:

> This Court has never held, or even intimated, that the Eighth Amendment serves as a check on the power of a jury to award damages in a civil case. Rather, our concerns in applying the Eighth Amendment have been with criminal process and with direct actions initiated by government to inflict punishment. <u>Awards of punitive damages do not implicate these concerns</u>. We therefore hold, on the basis of the history and purpose of the Eighth Amendment, that its Excessive Fines

Clause does not apply to awards of punitive damages in cases between private parties.[43]

While *Browning-Ferris* discusses punitive damage awards made in court proceedings, courts have similarly held that the Eighth Amendment does not apply to arbitration proceeds, though not while specifically discussing punitive damages.[44] However, there is no reason to conclude that an arbitration should be treated differently than a civil proceeding with respect to the Eighth Amendment.

### g. *Sawtelle* Is Inapposite

ABW relies on *Sawtelle v. Waddell & Reed, Inc.*[45] for the proposition that a trial court is empowered to reduce a punitive damages award in an arbitration if "excessive". While at first blush this

---

[43] *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 259–60 (1989)(emphasis supplied).

[44] *See e.g. Calzarano v. Liebowitz*, 550 F. Supp. 1389, 1390 (S.D.N.Y. 1982).

[45] 2005 NY Slip Op 06851 [21 A.D3.d 820].

case seems on point, especially because its reasoning relies upon Due Process grounds, the application of New York state law to the instant case is inappropriate. Unlike Connecticut, New York has an outright prohibition against punitive damages awards in arbitration on public policy grounds:

> An arbitrator has no power to award punitive damages, even if agreed upon by the parties (Matter of Publishers' Ass'n of N.Y. City (Newspaper Union), 280 App.Div. 500, 504—506, 114 N.Y.S.2d 401, 404—406). Punitive damages is a sanction reserved to the State, a public policy of such magnitude as to call for judicial intrusion to prevent its contravention. Since enforcement of an award of punitive damages as a purely private remedy would violate strong public policy, an arbitrator's award which imposes punitive damages should be vacated.[46]

This prohibition was eased somewhat by *Mastrobuono v. Shearson Lehman Hutton, Inc.*[47] in which the Supreme Court held that

---

[46] *Garrity v. Lyle Stuart, Inc.*, 353 N.E.2d 793, 794 (N.Y. 1976) *cf. MedValUSA Health Programs, supra.*

[47] 514 U.S. 52, 115 S.Ct. 1212 (1995).

under the FAA, even if an arbitration took place in New York, where punitive damages were unavailable, unless the contract specifically prohibited the award of punitive damages, they remained available. Nevertheless, the application to vacate punitive damages in *Sawtelle* was under New York law[48], not under the FAA.[49] *Garrity* has not been overturned, so the public policy presumption disfavoring punitive damages in New York arbitrations remains. Essentially, *Garrity* is inapplicable, because New York common law is different than both the common law in Connecticut and the FAA—which applies here.

The FAA and Connecticut law have no such analog policy to New York. Although *Sawtelle* cites *Gore* with respect to due process considerations, it is not instructive. The decision involves no discussion regarding how the confirmation of an arbitration award involves state action, a necessary component in the implication of the Due Process clause.  Other cases, discussed above, thoroughly consider the question of state action with respect to confirming an

---

[48] McKinney's CPLR § 7511.

[49] *Sawtelle, supra.* at 822.

arbitration award and concluded that there is none. Additionally,

unlike New York, "Connecticut does not have a well-defined public

policy against the award of excessive punitive damages" in arbitration

cases. *See Hadelman,* 274 Conn. at 447-448.

## IV.   CONCLUSION

The arbitrator's award of punitive damages was consistent with the parties' submission and was entirely justified in light of ABW's repeated CUTPA violations. Even if this Court disagreed with the award, the Federal Arbitration Act does not permit a district court to substitute its judgment for the arbitrator. The size of the award would not offend due process due to ABW's repeated violations of CUTPA and, in any event, due process considerations do not apply to arbitral awards or confirmation proceedings. For these reasons, the motion to vacate should be denied and the award should be confirmed.

PLAINTIFF, REBECCA M. MURILLO,

By: __/s/Daniel S. Blinn_____
    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Brendan L. Mahoney (ct29839)
    bmahoney@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax (860) 571-7457

## CERTIFICATION

I hereby certify that on January 10, 2019 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ *Daniel S. Blinn*
Daniel S. Blinn