UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REBECCA M. MURILLO,      :
    Plaintiff,      :
      :      No. 3:17-CV-1883 (VLB)
   v.      :
      :
A BETTER WAY WHOLESALE      :      July 15, 2019
AUTOS, INC and WESTLAKE      :
SERVICES, LLC,      :
    Defendants.      :


**MEMORANDUM OF DECISION GRANTING MOTION TO CONFIRM ARBITRATION AWARD [DKT. 40], DENYING MOTION TO VACATE ARBITRATION AWARD [DKT. 43], DENYING MOTION TO EXCLUDE [DKT. 51], AND DENYING MOTION TO STRIKE [DKT. 56]**

On November 9, 2017, Plaintiff Rebecca Murillo filed a Complaint against Defendants A Better Way Wholesale Autos, Inc. ("ABW") and Westlake Services, LLC ("Westlake") alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"), the Connecticut Retail Installment Sales Financing Act, Conn. Gen. Stat. § 36a-785 *et seq.* ("RISFA"), and the Uniform Commercial Code ("UCC"). *See generally* [Dkt. 1 (Compl.)]. Plaintiff's allegations stem from her purchase and finance agreement through ABW and with Westlake for a 2008 Lexus IS250 (the "Vehicle") in February 2017. *Id.* The Retail Purchase Order, governing Plaintiff's dispute with ABW, and the Retail Installment Contract, relating to Plaintiff's dispute with Westlake, each included arbitration provisions. Defendants sought to compel arbitration pursuant to those provisions and Plaintiff agreed. *See* [Dkt. 33 (ABW Stay & Compel Arbitration Mot.); Dkt. 34 (Plf. Resp. ABW Arbitration

1

Mot.); Dkt. 37 (Westlake Stay Mot.); Dkt. 38 (Plf. Resp. Westlake Stay Mot.)]. On May 15, 2018, the Court granted ABW's motion to stay and arbitrate, [Dkt. 35 (5/15/18 Order)], and on August 30, 2018 the Court granted Westlake's motion to stay and arbitrate and closed the case without prejudice to any party moving to reopen after the conclusion of the arbitration process, [Dkt. 39 (8/30/18 Order)].

The parties agreed to arbitrate their disputes before the American Dispute Resolution Center ("ADR") as a desk arbitration and under the American Arbitration Association ("AAA") rules. *See* [Dkt. 44 at 1-2]. Both sides made submissions to the arbitrator, following multiple missed deadlines by Defendants, and the arbitrator considered the claims on the merits. *See id.* at 1-2.

Before the Court now are Plaintiff's Motion to Confirm the Arbitration Award pursuant to § 9 of the Federal Arbitration Act, 9 U.S.C. § 9 ("FAA"), [Dkt. 40], and Defendants' Motion to Vacate the Arbitration Award pursuant to § 10(a)(4) of the FAA, [Dkt. 43]. The Court also considers in this decision Defendants' Motion to Exclude [Dkt. 51] and Plaintiff's Motion to Strike [Dkt. 56], which arise out of the motions to confirm and vacate the arbitration award.

I. Discussion

A. ABW's Motion to Exclude & Plaintiff's Motion to Strike

1. Motion to Exclude

Defendant ABW moved to exclude from the Court's consideration certain facts asserted by Plaintiff in her submissions to the arbitrator and her filings with the Court because they are inaccurate. [Dkt. 51 (Mot. to Exclude)]. Specifically, ABW seeks to exclude Plaintiff's assertions that she provided ABW her W-2 on

February 7, 2018; that the second deal offered to Plaintiff was not as good as the first deal; that any of the financing was conditional; and that Plaintiff was unaware that she was purchasing an oil change contract, a tire and wheel contract, or a service contract. *Id.* at 1-2. ABW contends that Plaintiff included these assertions in her September 27, 2018 Statement and October 1, 2019 Supplemental Statement provided to the arbitrator and now in her submissions to this Court and that they formed the basis of the arbitrator's decision. *Id.* at 2. ABW argues that the statements are inaccurate and that the Court should not rely on them. *Id.*

As the discussion *infra* regarding review of an arbitration decision makes clear, a court may not question the factual findings of an arbitrator or otherwise weigh the evidence the arbitrator evaluated in coming to his/her conclusions. *Westerbeke*, 304 F.3d at 214. Despite this, ABW now, and in its Motion to Vacate, makes arguments regarding interpretation of the facts and weighing of the evidence in the hope that this Court might find differently than the arbitrator. ABW's motion to exclude is essentially another attempt by ABW to present factual arguments and contest those made by Plaintiff in her submissions to the arbitrator. This is not the role of a court in reviewing an arbitration award, as discussed below.

ABW's motion does not provide a standard governing a "motion to exclude." Motions to exclude or suppress evidence are pre-trial motions requesting the court exclude a piece of evidence from an upcoming trial on admissibility or other evidentiary grounds. Alternatively, Federal Rule of Civil Procedure 12(f) provides for motions to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Here, ABW asks not that the Court withhold information from a jury or a pleading but that the Court exclude from its consideration information submitted by Plaintiff with her briefing on her motion to affirm and Defendants' motion to vacate the arbitration award. Such a motion is not proper. If a party wishes to argue that an asserted fact is not supported by the evidence, that party may do so in its briefing on the motion. *Cf. O'Brien v. Wisniewski*, No. 3:1 CV 120 (CSH), 2012 WL 1118076, at *3-4 (D. Conn. Apr. 3, 2012) (explaining that motions to strike are inappropriate in the summary judgment context because the court reviews and relies upon only admissible evidence); *Ricci v. Destefano*, No. 3:04 CV 1109 (JBA), 2006 WL 2666081, at *2 (D. Conn. Sep. 15, 2006) (explaining that a party should make any arguments that a fact is not supported by evidence or that evidence is not admissible in its summary judgment filings, not in a separate motion). ABW could have done just that in its briefing on Defendants' motion to vacate and Plaintiff's motion to affirm the arbitration award. It does not get another chance to do so via unnecessary additional motions practice. Accordingly, ABW's motion to exclude is DENIED.

## 2. Motion to Strike

In its reply in support of its motion to exclude, ABW suggests, for the first time, that Plaintiff's inaccurate statements "rise to the level of such significance as to warrant vacating the Arbitrator's Award in its entirety on the basis of fraud." [Dkt. 55 at 2]. Plaintiff moves to strike ABW's reply because it raises new arguments not included in ABW's motion to exclude, not to mention its motion to

vacate the arbitration award, or responsive to arguments made by Plaintiff in her opposition to the motion to exclude. [Dkt. 56 (Mot. to Strike) at 1-2].

As noted above, Rule 12(f) allows a court to strike only pleadings. *See* Fed. R. Civ. P. 12(f). "[A] reply memorandum is not a pleading." *O'Brien*, 2012 WL 1118076, at *3 (quoting *Marshall v. Webster Bank, N.A.*, No. 3:10-cv-908 (JCH), 2011 WL 219693, at *12 (D. Conn. Jan. 12, 2011). Thus, the Court cannot properly strike ABW's reply brief or arguments within it and Plaintiff's motion to strike is DENIED.

However, it is well established that "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). "New arguments first raised in reply papers in support of a motion will not be considered." *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998). Accordingly, the Court did not consider arguments made by ABW for the first time in its reply in support of its motion to exclude which are not made in response to Plaintiff's opposition to the motion to exclude.

### B. <u>Motion to Affirm & Motion to Vacate Arbitration Award</u>

Review of the arbitration award in this case is governed by the FAA. *See* 9 U.S.C. § I *et seq.* "It is well-settled that judicial review of an arbitration award is narrowly limited," *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991), and a district court "must grant" a motion to confirm an award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11," 9 U.S.C. § 9; *accord D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). Section 10 of the FAA sets limited grounds on which a court may vacate an award, including "(1) where the award was procured by corruption, fraud, or undue

means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10.

The Second Circuit has emphasized the "extremely limited" role of courts in reviewing arbitration awards, *Wall Street Assoc. L.P. v. Becker Paribas, Inc.*, 27 F.3d 845, 849 (2d Cir. 1994).  A court may not supplant its judgment for that of, or second-guess an arbitrator.  "[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)) (internal brackets and quotation marks omitted).  "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."  *Gottdiener*, 462 F.3d at 110.

Defendants move for vacatur arguing that the arbitrator exceeded his powers in that the award is completely irrational, *see* § 10(a)(4), and that the arbitrator's award is in manifest disregard of the law.  [Dkt. 44 at 6].  The Second Circuit has laid out separate standards for assessing vacatur under § 10(a)(4) for exceeding powers versus manifest disregard of the law.  In 2008, the Supreme Court "placed

the proper scope of the manifest disregard doctrine into some doubt" with its decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008). In *Hall Street*, the Supreme Court held that the FAA provided the sole statutory grounds for review of arbitration decision. 552 U.S. at 588. The Second Circuit read *Hall Street* as "reconceptualiz[ing]" manifest disregard "as a judicial gloss on the specific grounds for vacatur" of arbitration awards under 9 U.S.C. § 10. *See Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91 (2d Cir. 2008), *rev'd and remanded on different grounds*, 559 U.S. 662 (2010); *see also Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451-52 (2d Cir. 2011). "So interpreted, [the Second Circuit] concluded that manifest disregard remains a valid ground for vacating arbitration awards." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010) (internal quotation marks and citations omitted). Thus, the Court will consider Defendants' arguments under each of the two standards enunciated by the Second Circuit for vacatur under § 10(4) and manifest disregard of the law.

### 1. Section 10(a)(4) Exceeded or Imperfectly Executed Powers

Section 10(a)(4) of the FAA provides for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards pursuant to § 10(a)(4), especially where that language has been invoked in the context of arbitrators' alleged failure to correctly decide a question which all concede to have been

properly submitted in the first instance." *Westerbeke*, 304 F.3d at 220 (quoting *In re Andros Compania Maritima, S.A.*, 579 F.2d 691, 703 (2d Cir. 1978)) (internal brackets omitted). Thus, the court's inquiry "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Id.* (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997). In other words, the court will ask whether the arbitrators acted within the scope of their authority or whether the award is merely the arbitrators' own brand of justice. *Banco de Seguros*, 344 F.3d at 262.

For example, in *Fahnestock & Co., Inc. v. Waltman*, the Second Circuit considered whether New York's *Garity* rule categorically prohibiting the imposition of punitive damages by an arbitrator, precluded an award of punitive damages under an arbitration agreement that was silent on the punitive damages issue. 935 F.2d 512, 519 (2d Cir. 1991). The Second Circuit held that arbitrators lack the authority to award punitive damages under New York law and accordingly vacated the judgment. *Id.*

In *Westerbeke*, the Second Circuit distinguished the award of punitive damages at issue in *Fahnestock* from the award of expectancy damages at issue in *Westerbeke*, an award which *is* "within the broad power given to arbitrators." 304 F.3d at 220. The *Westerbeke* Court observed that "what is contested here is not whether the CSA allowed the arbitrator to award expectancy damages generally, but whether the arbitrator properly awarded these damages in the case at bar." *Id.* The *Westerbeke* Court concluded that "[s]ection 10(a)(4) does not

permit vacatur for legal errors" and "[a]s the parties in this case properly submitted the question of whether expectancy damages could be awarded for a violation of Article 3.2, the award cannot be vacated under § 10(a)(4)." *Id.*

The arbitration provision in the Retail Purchase Order governing the sale of the Vehicle establishes that the arbitrator "shall be empowered to enter equitable as well as legal relief, to provide all temporary and/or provisional remedies, and to enter equitable orders that will be binding upon the parties." [Dkt. 49-2, Ex. 2 at 2 (Retail Purchase Order)]. The Retail Installment Contract similarly provides that the arbitrator shall apply governing substantive law and that the arbitrator's award will be final and binding subject to any right to appeal under the FAA. [Dkt. 49-2, Ex. 3 at 4 (Retail Installment Contract)]. The contracts do not include any limitation on the arbitrator's powers to impose an award of punitive damages, or otherwise.

Connecticut law authorizes an award of punitive damages for violations of CUTPA at the court's discretion. *See* Conn. Gen. Stat. § 42-110g; *Gargano v. Heyman*, 525 A.2d 1343, 1347 (Conn. 1987). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Gargano*, 525 A.2d at 1347 (quoting *Collens v. New Canaan Water Co.*, 134 A.2d 825, 832 (Conn. 1967)).

Plaintiff's submission to the arbitrator includes her claim for punitive damages under CUTPA. *See* [Dkt. 49-2 (Claimant's Submission to Arbitrator) at 19]. Plaintiff cited *Gargano v. Heyman*, 203 Conn. 616, 622 (1987), in reciting the law governing an award of punitive damages under CUTPA—they are appropriately awarded when the evidence reveals a reckless indifference to the rights of others.

*Id.*  Plaintiff also cited a Connecticut Superior Court case in which the arbitrator awarded punitive damages of $35,000—seven times the amount of actual damages—where the arbitrator found that the defendant car dealership had acted with reckless indifference to the rights of the plaintiff.  *Id.* (citing *Benham v. Wallingford Auto Park, Inc.*, No. CV020459418S, 2003 Conn. Super Lexis 3250 (Conn. Super. Ct. Nov. 26, 2003)).  Plaintiff went on to argue that a substantial award of punitive damages is warranted in this case because of Defendants' reckless violation of CUTPA and in light of the multiple previous cases in which courts have entered smaller punitive damages awards against ABW[1]  after finding its practices to be unfair and deceptive which have failed to deter ABW from continued violations.  *Id.* at 21-22.

Defendants' submission to the arbitrator does not address punitive damages but does argue that Defendants' conduct did not constitute a CUTPA violation.  *See* [Dkt. 49-4 (Defs.' Submission to Arbitrator)].  In their motion, Defendants do not argue that the arbitrator lacked the power under the contracts or under the law to award punitive damages.  Indeed, the contracts and the law allow for such an award.  Thus, this case is akin to the facts in *Westerbeke*—the award at issue was within the broad powers of the arbitrator to impose, but defendants take issue with its imposition.  *See Westerbeke*, 304 F.3d at 220.  As the court found in *Westerbeke*, § 10(a)(4) does not allow the court to vacate an award based on legal error.  *See id.* In other words, § 10(a)(4) does not provide this Court with the authority to evaluate

---

[1] Plaintiff's submission cited two appellate decisions involving similar conduct by ABW and attached four arbitral awards involving similar conduct by ABW.  *See* [Dkt. 49-2 (Ex. 2 Plf's Submission) at 19-22, n.60].

the basis for the arbitrator's award of punitive damages on the facts of this case. As a result, Defendants' motion for vacatur under § 10(a)(4) is denied.

## 2. Manifest Disregard of Law

Defendants also invoke a doctrine which provides that "a decision may be vacated when an arbitrator has exhibited manifest disregard of law.'" *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121-22 (2d Cir. 2011) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002) (footnote omitted)). The standard of review under this doctrine is "severely limited." *Westerbeke*, 304 F.3d at 208 (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir. 1989)).

To justify vacatur, the court must find "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Id.* (quoting *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967)); *see also Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) ("In order to advance the goals of arbitration, courts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation."). Indeed, the Second Circuit has described it as "a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent[.]" *DiRussa*, 121 F.3d at 821.

The court considers both an objective and a subjective component in determining whether an arbitrator manifestly disregarded the law. *Id.* at 209. First, the court considers whether the "governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable." *Id.* (quoting

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1996)). Next, the court "looks to the knowledge actually possessed by the arbitrator"—he/she "must appreciate the existence of a clearly governing legal principle but decide to ignore or pay no attention to it." *Id.* (quoting *Bobker*, 808 F.2d at 933) (brackets omitted). A court must find both elements to warrant vacatur of an award. *Banco de Seguros*, 344 F.3d at 263. Further, the court "cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law" and should enforce the award despite a disagreement on the merits "if there is a *barely colorable justification* for the outcome reached." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (quoting *Banco de Seguros del Estado*, 344 F.3d at 260). In keeping with this standard, the Second Circuit has "used the manifest disregard of law doctrine to vacate arbitral awards only in the most egregious instances of misapplication of legal principles." *Id.* (collecting cases).

Defendants argue that the arbitrator's award of punitive damages was contrary to law and further that, even if the imposition of punitive damages was not improper in and of itself, the amount exceeded rationality. [Dkt. 44 at 8-9]. Both arguments fail for the reasons set forth below.

### i. Award of Punitive Damages

As already established *supra*, awarding punitive damages and attorneys' fees under CUTPA is discretionary. *Gargano v. Heyman*, 525 A.2d 1343, 1347 (Conn. 1987). Such an award is appropriate under Connecticut law where evidence reveals "reckless indifference to the rights of others or an intentional and wanton

violation of those rights." *Id.* (quoting *Collens v. New Canaan Water Co.*, 134 A.2d 825, 832 (Conn. 1967)). This standard is clearly established and Plaintiff's submission clearly provided this law to the arbitrator. In order for this Court to vacate the award for manifest disregard, the arbitrator must have chosen to ignore the clear law and impose his own brand of justice. On the other hand, if there is a barely colorable justification for the arbitrator's decision, the Court must uphold it.

Defendants contend that the arbitrator irrationally applied the law to his award of punitive damages. Specifically, Defendants take issue with the arbitrator's finding of willful, wanton, reckless indifference to rights of others justifying the award of punitive damages. [Dkt. 44 at 8-9 ("The facts of the case do not support a finding of deceptive business practices reckless behavior [sic] on the part of the Claimant and the award should be vacated as patently irrational.")]. Defendants contend that the evidence supports no such finding, but evinces, at worst, negligence. *Id.* Defendants lay out facts regarding the financial documents provided by Plaintiff and why they contend it was reasonable for Defendants to make assumptions about Plaintiff's income based on Plaintiff's paystubs. *See id.* Thus, Defendants challenge the arbitrator's factual finding, calling it patently irrational.

It is not this Court's role to second guess the arbitrator's findings of fact. The Second Circuit has established that "[t]he arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law." *Westerbeke*, 304 F.3d at 214 ("Under the manifest disregard standard, . . . the

governing law must clearly apply to the facts of the case, *as those facts have been determined by the arbitrator.*" (emphasis in original)).  Thus, this Court is without authority to question the factual findings of the arbitrator leading to the punitive damages award.

The arbitrator found that Defendants' conduct was in reckless or intentional disregard of Plaintiff's rights, justifying imposition of an award of punitive damages.  As the arbitrator's decision lays out, the evidence presented to the arbitrator supports a finding that Defendants' conduct justifies an award of punitive damages under Connecticut law.  *See* [Dkt. 49-8 at 3-4].  Specifically, the arbitrator calls on Defendants' incredible claim that Plaintiff made material misrepresentations on her initial loan application while the evidence—pay stubs in ABW's possession establishing her true income and handwriting different from Plaintiff's responsible for the inaccurate income information on the application— indicates that Defendants, not Plaintiff, wrote in the false information.  *Id.* at 3.  Based on this and similar evidence, the arbitrator concluded that "[t]he salesperson purposely wrote [a higher income] in that document when that person knew it was false to ensure the application would be denied" and to allow ABW to "pressure [Plaintiff] into a substantially more expensive credit deal."  *Id.* at 3-4.  In addition to the intentional violations of Plaintiff's rights, the arbitrator noted the existence of several prior arbitration awards against ABW for similar conduct, the policy behind punitive damages to discourage further violations, and the failure of previous awards to deter ABW's continued misconduct.  *Id.* at 4.

The arbitrator's analysis and finding of reckless indifference to the rights of others or an intentional and wanton violation of those rights is consistent with both the law and the facts. Thus, Defendants fail to show that the arbitrator manifestly disregarded the law governing imposition of an award of punitive damages for a violation of CUTPA.

### ii. Amount of the Award

Defendants also argue that there is "no legal support" for the amount of the arbitrator's punitive damages award of twenty-five times the contractual damages and that the amount of the award violates due process. [Dkt. 44 at 9-11]. Both of these arguments fail as well.

### a. No Legal Support

Defendants' argument that there is no legal support for the amount of the award fails for multiple reasons. First, it fails because any law Defendants would argue the arbitrator ignored in granting the amount is not "well defined, explicit, and clearly applicable." *Bobker*, 808 F.2d at 933. Second, it fails because Defendants have failed to establish that the arbitrator was aware of any such governing legal principle and chose to ignore it in making the award. *See id.* Finally, the argument fails because there is a colorable justification for the outcome reached by the arbitrator. *See Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004).

There is no precise formula for determining the amount of a punitive damages award in a CUTPA case, though "courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." *Advanced Fin. Servs., Inc. v. Associated Appraisal Servs. Inc.*, 830 A.2d 240, 250

(Conn. App. Ct. 2003) (quoting *Perkins v. Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 649, 734 A.2d 1010 (1999)). Defendants invoke *Bridgeport Harbor Place I, LLC v. Ganim*, 131 Conn. App. 99, 147 (Conn. App. Ct. 2011), in which the Connecticut Appellate Court explained that when an award of punitive damages is more than twice the amount of compensatory damages, it should be premised on identifiable and articulable aggravating factors. *See* [Dkt. 44 at 10].

In *Ulbrich v. Groth*, the Connecticut Supreme Court endorsed consideration of certain factors in determining whether a punitive damages award is so excessive as to constitute an abuse of discretion. *See Ulbrich v. Groth*, 78 A.3d 76, 126 (Conn. 2013). The factors include: the degree of blameworthiness (i.e., whether the defendant's conduct was reckless, intentional, or malicious); whether the defendant's action was taken or omitted in order to augment profit; whether the wrongdoing was hard to detect; whether the injury and compensatory damages were small, providing low incentive to bring the action; and whether the award will deter the defendant and others from similar conduct, without financially destroying them. *Id.*

At the same time, the *Ulbrich* Court explicitly rejected the imposition of a cap on the amount of punitive damages in CUTPA cases. *Id.* In *Ulbrich*, the Connecticut Supreme Court was "called upon to determine whether the legislature intended to place limits on punitive damages awards pursuant to § 42-110g(a)." *Id.* The *Ulbrich* Court concluded that the statute "clearly imposes no specific limit on the ratio of punitive damages to compensatory damages" and declined to "read

into clearly expressed legislation provisions which do not find expression in its words." *Id.*

Connecticut law clearly establishes that there is no set cap on the permissible amount of a punitive damages award for CUTPA violations. While Connecticut law provides factors to weigh in analyzing whether an award is excessively large, it does not provide explicit guidance on how to determine how much is too much. The law provides no set calculation or well-defined process for determining such a number. Thus, the objective component required for vacatur under the manifest disregard doctrine is not satisfied.

Even if Connecticut law clearly indicated when a CUTPA punitive damages award is too high, the parties made no effort to provide such law to the arbitrator such that the subjective component of the doctrine is satisfied. Plaintiff's submission to the arbitrator indicates that punitive damages are meant to punish the violator and that the punishment should fit the crime. [Dkt. 49-2 at 19]. Plaintiff's submission also notes the deterrent purpose behind punitive damages in requesting an award five times the actual damages. *Id.* at 21-23. As previously noted, Defendants did not bother to raise or respond to the issue of punitive damages in their submission to the arbitrator. Thus, while Plaintiff's submission and the arbitrator's decision indicate that the arbitrator had knowledge regarding the requirements for and purpose behind a punitive damages award, Defendants provide nothing to suggest that the arbitrator knew of any limit on the amount of allowable punitive damages which he manifestly disregarded.

Defendants are not satisfied with the analysis by the arbitrator leading to the award, suggesting that he did not consider the standard factors. *See* [Dkt. 44 at 11]. Defendants contend that *Bridgeport Harbor Place*, 131 Conn. App. at 147, would require a finding of aggravating factors beyond mere reckless conduct to warrant an award outside a normative 1:1 or 2:1 ratio. [Dkt. 44 at 10-12]. This argument fails to acknowledge the arbitrator's findings that ABW purposely and continually acted in defiance of Connecticut public policy. *See* [Dkt. 49-8 at 3]. Even under Defendants' explanation of the law, the arbitrator's award is appropriate—he clearly found multiple "aggravating factors." Moreover, consideration of each of the factors adopted by the Connecticut Supreme Court would encourage a large punitive damages award—defendants' conduct was arguably intentional, aimed at increasing their profits, preyed on vulnerable customers and therefore difficult to detect, and subject to relatively low statutory damages, and a greater penalty would potentially serve to deter future similar conduct. *See Ulbrich*, 78 A.3d at 126. Thus, a full review of the factors supports rather than contradicts the arbitrator's award.

Defendants cite no law to support their argument that the arbitrator's award of punitive damages is somehow in disregard of the law simply because it is greater than the amount requested by Plaintiff when the parties' submissions to the arbitrator plainly allow for a punitive damages award. Thus, this argument fails as well.

This Court acknowledges that the arbitrator's award of punitive damages in this case at twenty-five times the actual and statutory damages, for a total of

$234,708.50 in punitive damages, is significant.  But even if this Court believed that such an award would constitute an abuse of discretion if imposed by a court, such a standard is not applicable on review of an arbitration decision.  *See Westerbeke*, 304 F.3d at 208.  The question here is not whether the arbitrator abused his discretion or even erred in his application of the law, but whether he knowingly chose to disregard clearly established law.  Defendants have failed to show that the arbitrator so manifestly disregarded any law in setting the award.

### b.  Due Process Argument

Defendants also suggest that the punitive damages award exceeds constitutional limitations on punitive damages established by the United States Supreme Court. [Dkt. 44 at 17-18].

It is axiomatic that constitutional due process protections "do not extend to 'private conduct abridging individual rights.'"  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)).  Thus, only state action is subject to due process scrutiny.  Courts in this circuit have held that the state action element of a due process claim is absent in a private arbitration case.  *See, e.g., Austern v. Chicago Bd. Options Exch., Inc.*, 716 F. Supp. 121, 125 (S.D.N.Y. 1989) (holding the conduct of an arbitration panel "did not in any way constitute state action"), *aff'd*, 898 F.2d 882 (2d Cir.), *cert. denied*, 498 U.S. 850 (1990).  The Eleventh Circuit has similarly rejected the argument that awards of punitive damages in arbitration can violate due process.  *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1190-94 (11th Cir. 1998)

(holding that an arbitration award cannot constitute a due process violation because they do not involve any state action).  This Court holds the same.

Defendants contend that even if the arbitration involves no state action, the Court's confirmation of an arbitration award constitutes state action, implicating due process concerns, and courts have a duty to review the constitutionality of awards of punitive damages.  [Dkt. 44 at 17-19].  As the majority of other courts to consider this argument have concluded, this Court is not persuaded that the limited review of arbitration awards provided for under the FAA is broadened by the competing interest in supervising punitive damages awards.

Defendants cite *BMW of North America, Inc. v. Gore* and *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* in arguing for greater judicial oversight of arbitral punitive damages awards.  *See* [Dkt. 44 at 17-18].  In *BMW of North America, Inc. v. Gore*, the Supreme Court established the substantive standard for determining whether a jury award of punitive damages conforms with due process and held that the award in that case was grossly excessive and therefore exceeded the constitutional limit.  517 U.S. 559, 585-86 (1996).  The Court explained that it considered three guideposts in coming to the conclusion: the degree of reprehensibility of the conduct; the disparity between the harm or potential harm suffered and the punitive damages award; and the difference between the punitive damages remedy and the civil penalties authorized or imposed in comparable cases.  *Id.* at 574-75.  In *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, the Supreme Court established that courts of appeals should apply a *de novo* standard of review when passing on district courts' determinations of the constitutionality

of punitive damages awards. 532 U.S. 424, 436 (2001). The Court acknowledges that these cases call for greater judicial oversight of punitive damages awards in the jury award context. However, this case arises from a different context—a contractually agreed to arbitration decision.

In *Davis*, the Eleventh Circuit explained why due process does not require more stringent procedures and judicial review for excessiveness of arbitral punitive damages awards before the court confirms the award. 59 F.3d at 1190-94. First, the *Davis* Court emphasized that arbitration itself is a private proceeding that does not constitute the state action required to implicate due process. *Id.* at 1191. Second, and as noted above, the *Davis* Court rejected the contention, based on *Shelley v. Kraemer*, 334 U.S. 1, 19-20 (1948), that the court's enforcement of a private contract constitutes state action. *Id.* at 1192. The *Davis* Court highlighted that the holding of *Shelley* has not been extended beyond the context of race discrimination and therefore rejected the argument that the limited state action inherent in the confirmation of private arbitration awards mandates compliance with the due process clause. *Id.*

Even if the court's confirmation of an award were state action, the *Davis* Court concluded that the concerns which arise out of a jury award—the potential for jurors to express their biases against big businesses or those without a presence in a local community through their verdicts—is absent in the arbitration context. *Id.* The *Davis* Court reasoned that "the due process safeguards required for the imposition of punitive damages by a jury are not required where the parties have chosen to submit their dispute to a panel of arbitrators and have empowered

those arbitrators to consider the issues of punitive damages." *Id.* Finally, the *Davis* Court emphasized the federal policy favoring arbitration and requiring courts to rigorously enforce agreements to arbitrate. *Id.* For those reasons, the *Davis* Court held that the defendant's due process challenge to the arbitration panel's award failed. *Id.* The *Davis* Court explained that, "[t]o decide otherwise would constitutionalize private arbitration proceedings and diminish both the effectiveness and the appeal of the arbitral forum as an alternative means for resolving disputes." *Id.* at 1193-94.

This Court agrees with the analysis in *Davis* and other cases declining to apply due process protection to arbitration awards. *See Smith v. Am. Arbitration Assn., Inc.*, 233 F.3d 502, 507 (7th Cir. 2000) (holding arbitration is a "private self-help remedy" and holding no state action in context of equal protection violation claim on the basis of all male arbitration panel); *Davis*, 59 F.3d at 1191 (judicial enforcement of an arbitration award does not convert the award to state action); *MedValUSA Health Programs, Inc. v. MemberWorks, Inc.*, 872 A.2d 423, 435 (Conn. 2005) (same); *United States v. Am. Soc'y of Composers, Authors, & Publishers*, 708 F. Supp. 95, 96-97 (S.D.N.Y. 1989) (same).

Defendants contend that "the Supreme Court's call for more pro-active judicial involvement in reviewing the constitutionality of punitive damage awards suggests a rethinking of *Davis*[.]" [Dkt. 44 at 20]. The Court does not agree. Defendants received the process they bargained for—arbitration. The FAA limits vacatur of the results of that arbitration to limited bases. 9 U.S.C. § 10. The Supreme Court has repeatedly emphasized courts' limited role in review of

arbitration decisions.  *See Hall Street Ass'n, LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) (concluding that the FAA "substantiat[es] a national policy favoring arbitration's essential virtue of resolving disputes straightaway" and explaining that "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process . . . and bring arbitration theory to grief in post arbitration process." (internal quotation marks and citations omitted)).

This Court has conducted the review Defendants are entitled to under the FAA and found their arguments lacking.  Defendants have failed to demonstrate any state action which would trigger the applicability of the due process clause and broadening of judicial review of arbitration decisions.

II.  <u>Conclusion</u>

Based on the foregoing and consistent with § 9 of the FAA, the Court confirms the arbitrator's award, [Dkt. 40-1 (Ex. A, Arbitrator's Final Award)].  The Court GRANTS Plaintiff's Motion to Affirm the Arbitration Award, [Dkt. 40], and DENIES Defendants' Motion to Vacate the Arbitration Award, [Dkt. 43].  Further, the Court DENIES ABW's Motion to Exclude, [Dkt. 51], and Plaintiff's Motion to Strike, [Dkt. 56].

IT IS SO ORDERED.

*Vanessa Lynne Bryant*  Vanessa Bryant
2019.07.15 12:38:10 -04'00'

**Hon. Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut: July 15, 2019